420 A.2d 1066

**MARINE BANK**

v.

**Robert G. HUHTA and Christine M. Huhta, his wife, Appellants.**

**Gregg C. GARDINER**

v.

**Robert G. HUHTA and Christine M. Huhta, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1979.

Filed May 16, 1980.

Reargument Denied Oct. 4, 1980.

Burton L. Fish, Erie, for appellants.

Christine Hall McClure, Erie, for Marine Bank, appellee.

Stephen A. Tetuan, Erie, for Gregg Gardiner, appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

Appellants, Robert and Christine Huhta, have filed two appeals. Both appeals arise out of the Sheriff's sale of appellants' home at 12050 Skyview Drive in Edinboro, Erie County. The appeals have been consolidated, and will be decided by this opinion.

On November 17, 1978, the sheriff sold the Huhtas' home to Gregg C. Gardiner pursuant to Marine Bank's execution on a judgment against the Huhtas. On November 27, the

Huhtas filed a petition to set aside the sheriff's sale. A hearing was held on December 18, and on January 16, 1979, the lower court entered an order denying the petition. The Huhtas filed an appeal from that order on February 14, 1979. The appeal was listed as No. 144 April Term 1979.[1]

The Huhtas refused to surrender possession of the property, and on January 19, 1979, Gardiner filed an action in ejectment against them. On June 27, 1979, the lower court entered an order directing their ejectment, and the Huhtas filed an appeal from that order on July 19. The appeal was listed as No. 652 April Term 1979.

The major issues are those raised in Appeal No. 144, which concerns whether the sheriff's sale should have been set aside. If it should have been, then the Huhtas argue, in Appeal No. 652, that the order entered in Gardiner's action in ejectment was improper. If it is determined, however, that the sale should not have been set aside, then the Huhtas make no claim concerning the propriety of the order in Gardiner's action in ejectment.

–Appeal No. 144–

■ It is settled that a petition to set aside a sheriff's sale is addressed to the sound discretion of the lower court and that the court's decision will not be reversed on appeal unless there is a clear abuse of that discretion. *Fidelity Bank v. Pierson*, 437 Pa. 541, 264 A.2d 682 (1970); *Philadelphia National Bank v. New Ideas Enterprises, Inc.*, 424 Pa. 284, 227 A.2d 873 (1967); *Capozzi v. Antonoplos*, 414 Pa. 565, 201 A.2d 420 (1964). In arguing that the lower court abused its discretion, the Huhtas maintain that the sale should have been set aside (1) because it was conducted without proper prior notice; and (2) because of fraudulent misrepresentations.

–1–

As noted, the sheriff's sale was ordered by Marine Bank. The sale was originally scheduled for October 20, 1978, and

---

1. Gardiner moved to dismiss this appeal, but since he was not a party to the appeal, Judge PRICE, as motion judge for this court, on May 2, 1979, denied the motion.

there is no dispute that proper notice of that sale was given. On October 17, other creditors of the Huhtas filed a petition to stay the sale generally, "pending a determination of ownership of the subject property"; the creditors' claim was that the property was theirs by virtue of a constructive trust. Marine Bank was notified of the creditors' petition and informed the court that it would agree to a stay to a date certain within thirty days. The lower court entered an order directing that "the Sheriff Sale scheduled for October 20, 1978, . . . is hereby Stayed until November Sheriff Sale." The order was filed with the sheriff, and the Huhtas were informed of the stay. On October 20, the sheriff notified all present at the scheduled sale that it was continued until November 17, 1978, at 10:00 a. m. There were no new advertisements, handbills, or other notices of the continuation of the sale, and the sale took place as scheduled on November 17.

The Huhtas argue that under Pa.R.Civ.P., No. 3129(b) and (c), the stay of the sale until November 17 should have been advertised. These rules provide, in pertinent part:

(b) Notice of the sale of real property shall be given by handbills, by written notice to the defendant in the judgment and the owner or reputed owner and by publication, as hereinafter provided.

*       *       *       *       *       *

(c) The notice of sale provided in subdivision (b) shall include a notice directed to all parties in interest and claimants that a schedule of distribution will be filed by the sheriff on a date specified by the sheriff not later than thirty (30) days after sale and that distribution will be made in accordance with the schedule unless exceptions are filed thereto within ten (10) days thereafter. No further notice of the filing of the schedule of distribution need be given.

Pa.R.Civ.P., No. 3129(b), (c).

However, Rule 3129(d) provides the following exception to the notice requirements of subsections (b) and (c):

(d) If the sale is stayed or continued or adjourned generally, new notice shall be given as provided by subdivisions (b) and (c). If the sale is continued or adjourned at the direction of the plaintiff to a date certain within forty–five (45) days, and public announcement of the adjournment and new date is made to the bidders assembled at the time and place originally fixed for the sale, no new notice shall be required, but there may be only one such continuance or adjournment to a date certain without new notice.

Pa.R.Civ.P., No. 3129(d).

The issue, therefore, is whether the stay entered in this case fit within the exception provided in Rule 3129(d).

Rule 3129(d) is similar to Rule 3128(c), which provides that no new notice is required if a sale of personal property is continued to a date certain within thirty days.[2] In describing the effect of Rule 3129(d), Goodrich–Amram refers to the Commentary to Rule 3128(c), which describes the purpose and effect of the exception as follows:

Rule 3128(c) does, however, express a realization by the draftsmen that notice need not be as formal and as widely publicized as the notice of the original sale when the circumstances are such as to make it likely that less will be sufficient to protect the interests of all parties. Section (c) thus dispenses with the full panoply of notice

2. Like Rule 3128(c), Rule 3129(d) originally only provided a thirty day exception. Goodrich–Amram describes the reason for the amendment to forty–five days as follows:

This apparently minor amendment has important practical aspects. As originally drawn, a second set of handbills and advertising was required where a sheriff's sale was adjourned generally; but this substantial burden and expense was excused if it was adjourned at the direction of the execution creditor to a new date within thirty (30) days of the original sale date. In some counties, the times fixed for sales are on a "monthly" or "term" or other basis which may run a few days over this 30–day maximum period. This had the unfortunate result of requiring new handbills and advertising in every adjournment, even though it was to the next regular monthly sale date. To eliminate this unintended burden and expense, the amendment extends the maximum period from 30 to 45 days. Goodrich–Amram 2d, Standard Pennsylvania Practice, Vol. 9, § 3129(d):1, p. 319 (footnote omitted).

under the preceding sections of the Rule if the following conditions are met: (1) the sale is continued or adjourned at the direction of the plaintiff; (2) the sale is re–set for a date certain within 30 days of the original date; (3) public announcement of the adjournment and the new date is made to the bidders assembled at the time and place originally set; (4) there has been no such postponement of that sale at any prior time. The purpose of these requirements is clear.

Formal notice may be dispensed with if it is likely that it is unnecessary to reach all those who would be interested in the sale and in participating therein. It is safe to assume that in most cases, this class of person will appear at the time and place set for the initial sale. Communication of the postponement to them at that time, even though oral, should suffice to dispense with the need for any further and more formal steps. If, however, the sale is postponed more than once, it is likely that many prospective bidders will be discouraged from appearing at the adjourned dates; thus, formal notice with its wide distribution ought to be required regarding any postponed sale other than the first. Such is in fact required by Rule 3128(c). The plaintiff will have to comply with the express provisions of sections (a) and (b), as though notice were being given for the first time. Public announcement at the time of sale will not suffice. The same is true if the sale is postponed at the direction of the plaintiff to a date more than 30 days later than the original date of sale.

Goodrich–Amram 2d, Standard Pennsylvania Practice, Vol. 9, § 3821(c):1, p. 306. *And see Mengel v. New Tripoli National Bank*, 156 Pa.Super. 434, 40 A.2d 859 (1944).

Here, the lower court held that its stay of the sheriff sale fit within the exception contained in Rule 3129(d), and that therefore no new notice was required. The Huhtas argue that that exception did not apply because the order of the lower court used the term "[s]tayed" instead of the terms "continued or adjourned," and because the stay was not

entered at the direction of the executing creditor, Marine Bank, but upon the petition of other creditors.

■ The fact that the lower court used the word "[s]tayed" instead of "continued" or "adjourned" does not defeat the application of the exception contained in Rule 3129(d), for the obvious purpose and effect of the court's order and the sheriff's announcement were to continue the sale until a date certain within forty–five days. We do note that the word "stayed" is not used in the exception contained in Rule 3129(d). In the interest of strict accuracy, the court might have better expressed its purpose by using either the word "continued" or the word "adjourned." However, the Huhtas have not shown how this deviation from strict accuracy could have prejudiced them, and in the circumstances, we regard it as unimportant.

■ We are also not persuaded by the Huhtas' argument that the exception was inapplicable because the petition for the stay was not filed by Marine Bank but by other creditors. The record of the hearing on December 18 demonstrates that Marine Bank was present when the petition was presented to the court, that it agreed to a stay but only if the stay were granted to a date certain within thirty days, and that the lower court acceded to Marine Bank's request, extending the stay only "until November Sheriff Sale." Thus, while the petition was filed by other creditors, the stay as granted was in accordance with the wishes of Marine Bank, which obviously sought to avoid the expenses of providing new notice. In these circumstances the lower court was entitled to regard the stay as granted at the direction of Marine Bank.[3]

–2–

The Huhtas' argument that the sheriff's sale should have been set aside because of fraudulent misrepresentations is

---

**3.** Marine Bank argues that even if this court were to hold that Rule 3129(d) did not apply, still the Huhtas should not be granted relief as they had actual notice of the extension. In light of our holding that Rule 3129(d) does apply, we do not reach this argument.

based upon their allegation that attorneys representing other creditors and potential buyers fraudulently induced their real estate agent to retract an offer to Marine Bank to cure their defaults.

Proof of fraud or overbearing may be a sufficient ground to set aside a sheriff's sale. *See Harris v. Harris,* 428 Pa. 473, 239 A.2d 783 (1968) (allegation of fraud and forgery of signature sufficient to withstand a demurrer); *Capozzi v. Antonoplos, supra* (grant of petition to set aside sheriff's sale affirmed; lack of proper notice, inadequate price, and suspicion of fraud). In this case, however, while the Huhtas alleged fraud and overbearing, they failed to prove either when they had the opportunity at the hearing on their petition on December 18, 1978.

The record shows that on November 17, just before the sale of the Huhtas' property, Jeanne MacLeod, a real estate agent who had been attempting to arrange a private sale of the property, gave a check to the attorney representing Marine Bank, but after engaging in a conversation with attorneys representing other creditors and a potential purchaser, she retrieved the check and left the sale.[4] The Huhtas, however, did not call Ms. MacLeod to testify to these events but instead relied solely upon the testimony of the attorneys who spoke with her. Their testimony was as follows. Ms. MacLeod had informed them that the check was supported not by funds from the Huhtas but from the real estate agency she worked for, and that the check was offered in the hope that the sheriff's sale could be postponed until she could arrange a private sale and earn a real estate broker's commission. When asked when she planned to make that sale, she could not answer. The attorneys told her a long delay might cause problems because of additional liens and expenses that could be lodged against the property.

4. The Huhtas have not argued that Marine Bank was bound to accept the check to cure the default. *Cf.* Act of Jan. 30, 1974, P.L. 13, No. 6, § 404, 41 P.S. § 404 (Purdon's Supp. 1979–80) (right to cure when made at least one hour prior to commencement of bidding).

When she asked them to explain, they proceeded to describe some of the claims against the Huhtas that they believed could be lodged. After hearing about some of those claims, Ms. MacLeod said that she had enough headaches, or something to that effect, and retrieved the check from the attorney for Marine Bank and left the sale. The Huhtas did not prove that any of the explanations given to Ms. MacLeod by the attorneys was in fact false, or fraudulent, or that any fraud or overbearing was intended or achieved. On such a record, we cannot say that the lower court abused its discretion in refusing to grant the Huhtas' petition to set aside the sheriff's sale because of fraud or overbearing.[5]

Since neither argument offered by the Huhtas demonstrates that the lower court abused its discretion by refusing to set aside the sheriff's sale, we are required to affirm the order of the lower court in Appeal No. 144.

### –Appeal No. 652–

Since the Huhtas' argument in Appeal No. 652 is based upon this court's reversing the lower court in Appeal No. 144, we shall not reach the issue there raised.[6]

Affirmed.

---

**5.** In their brief in Appeal No. 144 the Huhtas have offered a summary of what they describe as "the real facts" concerning the existence of other liens and the alleged fraud committed by the attorneys. It is settled, however, that an appellate court must decide a case on the basis of the facts of record and not on the allegations of facts contained in a party's brief. *See In the Interest of Carroll*, 260 Pa.Super. 23, 27 n. 4, 393 A.2d 993, 995 n. 4 (1978).

**6.** If this court had reversed in Appeal No. 144 and that were the only appeal before this court, Gardiner, as a non–party, *see* note 1 *supra*, would not have been affected. Section 5105(f) of the Judicial Code provides that "the reversal or modification of any order of a court in a matter in which the court has jurisdiction of the sale . . . of real . . . property shall not divest any estate or interest acquired thereunder by a person not a party to the appeal." Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended*, Act of April 28, 1978, P.L. 202, No. 53, § 10(58) (Purdon's Pamphlet 1979). This section was derived from the Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S. § 793 (Purdon's 1975). *See In Re Harper's Estate*, 418 Pa. 196, 210 A.2d 288 (1965).